CASE 80.—ACTION BY CARRIE D. GROFF AGAINST . THE CITY OF GEORGETOWN, IN WHICH THE CITY FILED A CROSS-PETITION AGAINST JAMES P. DONAVAN AND ANOTHER.—December 4, 1910.

## City of Georgetown v. Groff, &c.

Appeal from Scott Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for plaintiff against the city and denying it any relief on its cross-petition, the city appeals. —Reversed.

1. Indemnity—Joint Wrongdoers.—There can be no indemnity as between joint tort-feasors, unless the one seeking indemnity did not join in the unlawful act, though exposed to liability therefor, and he has been made to suffer therefor in damages.

2. Indemnity—Joint Wrongdoers.—Until a judgment against a city for injuries to a traveler on a defective street has been paid by it, it may not proceed against a third person actually liable for the defect for indemnity.

3. Witnesses—Examination—Leading Questions.—Where leading questions are objected to, the court should require counsel to so frame his questions as not to suggest the answers desired.

4. Evidence—Opinion Evidence—Admissibility.—The testimony of a physician in a personal injury action that he thought the injury would produce a certain result, and that in his judgment it did produce such result, was equivalent to a statement that the injury would and did produce the result and was competent.

5. Municipal Corporations—Obstructions in Streets—Precautions Against Injuries.—A city must keep its streets in a reasonably safe condition, and where, in making improvements, it becomes necessary to place obstructions therein, it must use reasonable care to protect persons using the

street at night from injury by giving notice, by the use of lights or other means, reasonably sufficient to warn the traveling public of the presence of the obstructions.

6. Municipal Corporations—Obligation of Travelers on Streets.— A traveler on a street at night must use ordinary care in driving thereon.

7. Damages—Personal Injuries—Double Damages.—A person permanently injured is entitled to recover for his diminished earning power because of such injury, but he is not also entitled to a recovery for the permanent impairment of his health, for such a recovery will permit double damages for the personal injury.

8. Damages—Personal Injuries.—A person sustaining a physical injury is entitled to such damages as will fairly compensate him for any suffering which he has endured and which it is reasonably certain he will endure in the future as the direct and proximate result of the injury, and for any loss of time occasioned by the injury, and for any reduction of his power to earn money.

B. M. LEE for appellant.

FORD & FORD for appellee Groff; J. N. ELLIOTT and STOLL & BUSH for appellee Cantrill.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

While driving in a buggy on Chambers avenue in the city of Georgetown, on the night of September 14, 1908, Mrs. Carrie D. Groff drove against or over a pile of locust posts which had been put in said street and left there while certain repairs were being made by James P. Donovan, under contract with the city of Georgetown. When her buggy came in contact with the posts it was overturned and she was injured. Thereafter she brought suit against the city, in which she claimed damages in the sum of $10,-000 because of the injuries thus received, and charged that the city had been negligent in failing to keep its street in safe condition for public travel.

The city answered, and, in addition to denying the material allegations of the petition, pleaded contributory negligence. It made its answer a cross-petition against Donovan, the contractor, and Mrs. Mary C. Cantrill. Summons were issued on this cross-petition and Donovan and Mrs. Cantrill brought before the court. General demurrers were filed to the cross-petition by Donovan and Mrs. Cantrill, and, upon consideration, the demurrer filed by Mrs. Cantrill was sustained, and the cross-petition was dismissed as to her. Donovan answered, in two paragraphs. In the first he pleaded that Mrs. Cantrill was the real owner of the logs; that he cut down the trees and she directed him to leave them where they were in the street; and that in obedience to her order he did so. In the second paragraph he admits that he is an independent contractor, but pleads that if there was any negligence it was the negligence of joint tort-feasors, and he denied the right of the city to recover anything from him. A general demurrer to the answer of Donovan was filed, but no disposition was made of it, and the city answered. On the issues thus joined the cause went to trial, and at the conclusion of the evidence a peremptory instruction was given the jury to find for defendant Donovan, and the cross-petition was dismissed as to him. The trial proceeded against the city alone, with the result that a verdict of $5,000 was returned in favor of the plaintiff. Judgment was entered thereon, and, the motion and grounds for a new trial having been overruled, the city appeals.

We will consider the grounds upon which a reversal is asked in the order in which they were made. The first and second complaints of the city may be considered together. The first is that the court erred

in sustaining a demurrer to its cross-petition and dismissing same as to Mrs. Cantrill; and the second is that the court erred in instructing the jury at the conclusion of the evidence to find for the defendant Donovan and in dismissing the case as to him on its cross-petition.

It is the contention of the city that its cross-petition stated a cause of action against both Donovan and Mrs. Cantrill. Section 96, subsec. 3, of the Civil Code of Prac., defines a cross-petition as follows: "A cross-petition is the commencement of an action by a defendant against a codefendant or a person who is not a party to the action, or against both; or by a plaintiff against a co-plaintiff, or a person who is not a party to the action, or against both." 'It is clear, from this definition, that in order for the defendant to successfully maintain its position, it must set up in its cross-petition a cause of action against its codefendants or against the parties whom it sought to have made codefendants. Has it done so? We think not. They were joint tort-feasors, and it is a well-established rule that, as among themselves, there can be no indemnity, unless it be made to appear that the one seeking indemnity did not join in the commission of the unlawful act and he has been made to suffer thereby, i. e., to respond in damages therefor. This principle was recognized by this court in the case of Blocker v. City of Owensboro, 129 Ky. 75, 110 S. W. 369, in which it was held: "It is well settled that, although a person injured by an obstruction in the street may sue the city alone, or both the city and the person who placed the obstruction in the street, and recover damages against both, and look to either or both for satisfaction of the

judgment, yet as between the wrongdoers the city
may, if it is required to satisfy the judgment, recover
the amount thereof from the person who placed the
obstruction in the street.'' And, in dealing with the
same subject, we find the following in 22 Cyc. 99:
''It is a well-established rule of law that there can
be no indemnity among tort-feasors. But this rule
does not apply to a person seeking indemnity who
did not join in the unlawful act, although he may
thereby be exposed to liability or to one who did
not know and was not presumed to know that his
act was unlawful; it must appear that the parties are
in pari delicto as to each other before plaintiff's
recovery will be barred.'' The circumstances under
which one joint tort-feasor is permitted to recover
from another are clearly stated in the case of Geneva
v. Brush Electric Co., 50 Hun. 581, 3 N. Y. Supp. 595:
''The cases in which recovery over is permitted in
favor of one who has been compelled to respond to the
party injured are exceptions to the general rule and
are based upon principles of equity. Such excep-
tions obtain in two classes of cases: First, where
the party claiming indemnity has not been guilty
of any fault, except technically or constructively, as
where an innocent master was held to respond for
the tort of his servant acting within the scope of his
employment; or second, where both parties have been
in fault, but not in the same fault, towards the party
injured, and the fault of the party from whom in-
demnity is claimed was the primary and efficient
cause of the injury.'' Thus, it will be seen that, even
in that class of cases which are looked upon and
treated as exceptions to the rule, and wherein a re-
covery is permitted by one joint tort-feasor against
another, it is held that the right to such recovery is

based upon two propositions: First, that the one seeking indemnity has been compelled to respond in damages for the wrong; and, second, that he was not in equal fault with the joint tort-feasor against whom he is proceeding.

For the purposes of the question at hand, the case must be decided adversely to the contention of the city, for, at the time it was seeking to proceed by cross-petition against Donovan and Mrs. Cantrill, it had not been compelled to respond in damages for the wrong. It had paid nothing; it had suffered no loss; and hence, under the authority of the Blocker Case and the Geneva Case, supra, the city was not entitled to maintain its cross-petition against either Mrs. Cantrill or Donovan; and the trial court correctly held that it stated no cause of action against Mrs. Cantrill, and should have sustained the demurrer of Donovan to the cross-petition as well.

We expressly refrain from passing upon the right of the city to proceed against either Donovan or Mrs. Cantrill, or both, in the event plaintiff shall finally recover and collect a judgment against it; but simply hold that, until a judgment has been recovered against it and such judgment been paid by the city, it may not proceed against either for indemnity.

The next ground for reversal relied upon is that the court erred in admitting certain evidence. During the progress of the trial the witness Sam Young was permitted to testify that, while he was working for Donovan, the contractor, and had charge of the men who cut down the trees and piled the logs in the street, he placed lights on the logs at night each night up to the Saturday night before the accident, which happened on Monday night, and that on sev-

eral occasions he had conversations with Donovan about the danger or probability of an accident happening in the event the lights were not kept on the logs. This testimony, of course, was permitted to go to the jury for the purpose of showing knowledge on the part of Donovan that the logs, as placed in the street, if left unguarded, were liable to cause some one to be injured, and had the court not given a peremptory instruction to find for Donovan as against the city, the instruction would have, no doubt, confined this evidence towards establishing or fixing the liability of Donovan as between him and the city. But, inasmuch as the cross-petition was dismissed as to him, this evidence became unimportant, and will not be given at all upon another trial; hence, a further consideration of the ruling of the trial judge in permitting this evidence to go to the jury need not be entered into.

The other evidence complained of as incompetent and prejudicial is the testimony of Dr. Pack, the witness who attended Mrs. Groff and treated her for her injuries. The objection, it seems, goes more to the form of the question than to the competency of the evidence. The questions complained of were undoubtedly leading, and the court should have required counsel to so frame his questions as not to suggest the answers desired. But we do not think that defendant's case was prejudiced by reason of the form in which these questions were put. The contention of counsel for defendant that the answers to the several questions propounded to Dr. Pack, were incompetent is, we think, without merit, for while it is true the doctor's testimony was not positive, still it must be remembered that the testimony of physicians as to whether or not a given effect is produced, or has been

produced or brought about, by certain acts is always matter more or less speculative, and when the doctor, in answer to the question as to whether or not the given acts—i. e., the injury—produced a certain result, answered, "I would think it would," or, "In my judgment it did," his answer is as well understood by the jury, as though he had answered "It would" or "It did," for in the end he means that such is his judgment based upon his experience as a practitioner. We think this evidence was competent.

The next ground relied upon for reversal is that the court did not properly instruct the jury. Complaint is made especially of instructions 1 and 3. Instruction No. 1 is objectionable upon two grounds: First, in it the jury is told that it is the duty of the city to protect persons using the street at night from injury, thus making the city an absolute guarantor of the safety of the traveling public while passing over its streets at a time when improvements are being made thereon, when the instruction should have been to the effect that it was the duty of the city to use reasonable means to protect the traveling public from injury, etc.

The complaint of appellant that the court erred in telling the jury that it was the duty of the city to maintain upon or near the obstruction lights at night is not well taken, for it is immaterial whether the lights used are upon or near the obstruction, so long as they afford or give to the traveling public such warning as is reasonably necessary to advise them of the presence of the obstruction in the street. As said by this court in the case of Grider v. Jefferson Realty Co., 116 S. W. 691, it is the duty of the city, when the obstructions are placed in the street to use such means as are reasonably necessary to warn

those using the street of the presence of the obstruction, and it is a question for the jury, under the particular facts in each case, to determine whether or not the means used for this purpose were reasonably sufficient. Guard rails, lights, or watchmen, any or all, might be required, according to the local conditions. In some instances guard rails might be amply sufficient, in others, lights, while in still others additional means might be required. No hard and fast rule can be laid down fixing the means that shall be employed in each particular case, further than to say that they shall be such as are reasonably sufficient to warn the traveling public of the presence of the obstruction. Instruction No. 1 was not as explicit upon this point as it should have been, and for this reason in addition to that above given, it was faulty, and upon another trial, in lieu thereof, the court will give the following: "The court instructs the jury that it was the duty of the plaintiff Carrie D. Groff, in driving upon and over the streets of the defendant, the city of Georgetown, to use ordinary care for her own safety; and it was the duty of the defendant, the city of Georgetown, to keep its streets in a reasonably safe condition for public travel, and if, in making improvements thereon, it became necessary to place logs or other obstructions in the streets, then it was the duty of said city to use reasonable care to protect persons using the said street at night from injury by giving such notice, by the use of lights or other means, as was reasonably sufficient to warn the traveling public of the presence of such obstructions in the street; and if the jury believe from the evidence that the defendant, the city of Georgetown, its agents, servants or employes, placed in and upon

Chambers avenue, a public street in said city, the pile of logs with which the plaintiff Carrie D. Groff came in contact, or that said city, its agents and servants or employes, suffered and permitted said logs to remain in said street after notice of their presence therein, and the plaintiff Carrie D. Groff came in contact with them and was by reason thereof injured, and that the defendant, the city of Georgetown, failed to use reasonable care to protect persons using said street at night from injury, by giving such notice of the presence of said obstruction in said street, by the use of lights or other means reasonably sufficient to warn them of the presence of such obstruction, when using the street in a reasonably careful and prudent manner, and by reason of such failure on the part of the defendant, if it did so fail, the plaintiff drove her buggy upon or against said logs, causing it to be overturned and producing the injuries of which she complains, and she did not, by her own negligence, help to cause or bring about her injury, then the jury should find for the plaintiff; and, unless you so believe, you should find for the defendant.''

Appellant also complains of instruction No. 3, which is as follows: ''If the jury find for the plaintiff Carrie D. Groff under instruction No. 1, they ought to award her such a sum of money as they believe from the evidence will fairly and reasonably compensate her for the pain and suffering, mental and physical, sustained by her as a result of the injuries complained of, and for the permanent impairment of her health and power to earn money, if any, not exceeding the sum of $10,000, the amount claimed in the petition.'' This instruction authorized

the jury to award double damages if they believed
from the evidence that the injury was permanent.
Plaintiff, if her injury is permanent, is entitled to re-
cover for her diminished power to earn money be-
cause of such injury. This is the full measure of her
recovery for her permanent injury, and she is enti-
titled to no instruction authorizing any recovery for
the permanent impairment of her health. The per-
manent impairment of her power to earn money is
the result of the permanent impairment of her health,
and to permit a recovery for the latter as well as the
former would be to authorize the jury to award her
double damages for her permanent injury. This the
law does not contemplate. The evidence tending to
show that plaintiff's injury  is permanent is quite
meager, still there is some slight evidence author-
izing the court to give an instruction upon this point.
But the instruction given was erroneous and highly
prejudicial to the defendant. If, upon the next trial
the evidence shows that the plaintiff has fully re-
covered, then, in lieu of instruction No. 3, as given
upon the last trial, the court will give the following:
"If you find for the plaintiff Carrie D. Groff, under
instruction No. 1, you should award her such sum as
will fairly compensate her for any suffering, mental,
or physical, which she has endured by reason of the
injury complained of, and for any loss of time occa-
sioned by said injury, not exceeding in all $———."
Although the plaintiff has not entirely recovered and
is yet suffering because of said injury, if there is
no evidence tending to show that her injury is perma-
nent, the court will give the following instruction:
"If you find for the plaintiff Carrie D. Groff under
instruction No. 1, you should award her such sum as

will fairly compensate her for any suffering, mental or physical, which she has endured, and which it is reasonably certain from the evidence she will yet endure as the direct and proximate result of her injury, and for any loss of time occasioned by said injury, not exceeding in all $————." If there is evidence tending to show that the injury is permanent, then the court should give the following instruction: "If you find for the plaintiff Carrie D. Groff under instruction No. 1, you should award her such sum as will fairly compensate her for any suffering, mental or physical, which she has endured by reason of the injury complained of, and for any loss of time occasioned by said injury, and for any reduction of her power to earn money."

For the reasons indicated, the judgment is reversed and cause remanded for a new trial and further proceedings consistent herewith.